23CA2128 Peo in Interest of MM 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2128 El Paso County District Court No. 22JV30034 Honorable Robin Chittum, Judge The People of the State of Colorado, Appellee, In the Interest of M.M. and J.M. III, Children, and Concerning T.W., Appellant. JUDGMENT AFFIRMED Division III Opinion by JUDGE YUN Dunn and Moultrie, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado for Appellee Debra W. Dodd, Guardian Ad Litem Bergner Law Office, LLC, Stephanie Bergner, Leif Ericson, Carbondale, Colorado for Appellant 
1 ¶ 1 T.W. (mother) appeals the judgment terminating her parent-child legal relationships with M.M. and J.M. III (the children). We affirm. I. Background ¶ 2 The El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect, alleging that mother physically abused and failed to supervise the children and that she had a history of abusing substances. Mother admitted the allegations, and the juvenile court adjudicated the children dependent and neglected. The court then adopted a treatment plan for mother that required, among other things, that she address her substance abuse and mental health issues, participate in life skills training, demonstrate parental protective capacity, and provide for the children’s needs. ¶ 3 About a year later, the Department moved to terminate mother’s parental rights. The juvenile court held an evidentiary hearing, after which it granted the Department’s motion and terminated the parent-child legal relationships between mother and the children. 
2 II. Reasonable Efforts ¶ 4 Mother asserts that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the children. We disagree. A. Applicable Law and Standard of Review ¶ 5 Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2023, the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2023. Reasonable efforts means the “exercise of diligence and care” to reunify parents with their children. § 19-1-103(114). ¶ 6 Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b). Other services, 
3 including transportation assistance, must also be provided if the government has sufficient funding. § 19-3-208(2)(d). ¶ 7 The juvenile court should consider whether the services provided were appropriate to support the parent’s treatment plan, People in Interest of S.N-V., 300 P.3d 911, 915 (Colo. App. 2011), by “considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan,” People in Interest of My.K.M. v. V.K.L., 2022 CO 35, ¶ 33. But the parent is ultimately responsible for using the services to comply with the plan. People in Interest of J.C.R., 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent’s unwillingness to participate in treatment in determining whether the department made reasonable efforts. See People in Interest of A.V., 2012 COA 210, ¶ 12. ¶ 8 Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. People in Interest of A.S.L., 2022 COA 146, ¶ 8. We review the juvenile court’s factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. Id. 
4 B. Analysis ¶ 9 The juvenile court found that the Department had made reasonable efforts by “try[ing] to support and engage” mother and “get[ting] her access to resources” that she needed to complete her treatment plan. For example, the court found that the Department arranged supervised family services and that the caseworker “even supervised some visits herself.” The court also found that the Department had “offered and provided transportation assistance,” which included a monthly bus pass and rides from staff and providers. The court further found that the Department had made “many referrals” to “numerous providers” for substance abuse, mental health, and life skills services. ¶ 10 However, the juvenile court concluded that the Department’s efforts were “tempered” by mother’s “willingness to engage.” Although mother completed substance abuse and mental health evaluations, the court noted, she did not consistently participate in treatment or monitored sobriety. The court found that mother had only “sporadically” participated in life skills and that her minimal participation did not result in stability in her life. And while the court recognized mother’s participation in family time, it also found 
5 that mother continued to “struggl[e] with parental protective capacity based on the issues that have come up during her visitation.” ¶ 11 The record supports the juvenile court’s findings. The caseworker testified that mother completed substance abuse and mental health evaluations and the Department made “numerous referrals to numerous providers,” but mother did not engage in treatment. The caseworker also reported that mother completed just three drug screens, all of which were positive for methamphetamine. The caseworker said that the Department made three referrals for life skills; the life skills worker for the third provider described mother’s engagement as “sporadic” at best. The caseworker and a family time supervisor also discussed two different incidents that occurred at family time — one in which mother “flipped” over a table and another where she threw a chair at an employee. Finally, the caseworker testified that the Department gave mother “a bus pass on a monthly basis” and provided her with rides, as well as “resource lists of individuals that she could connect with to have transportation services set up.” And 
6 the caseworker indicated that the life skills worker and mother’s family time supervisor also provided mother with rides. ¶ 12 Despite this record, mother asserts that the Department failed to make reasonable efforts because it did not provide her with (1) adequate family time services; (2) necessary transportation to her services, particularly visits; and (3) housing resources. ¶ 13 We first address mother’s assertion that the Department failed to provide her with family time services for three reasons. We reject all three reasons. ¶ 14 First, we are not persuaded by mother’s contention that the Department failed to provide her with visits for “weeks at a time.” Mother directs us to only a single circumstance of this purported failure, which occurred before the juvenile court adopted a treatment plan for her. At that time, the court found that the Department had not made reasonable efforts, and it ordered the Department to make up the missed visits. On appeal, mother has not directed us to anything in the record to indicate that the Department subsequently failed to provide these make-up visits and therefore failed to provide adequate family time services. 
7 ¶ 15 Second, mother argues that the Department did not provide video visits to her during a very brief period about three months before the termination hearing. The record shows that, after mother threw a chair at the family time supervisor and was discharged from services, the caseworker made additional referrals but could not find a new provider. Meanwhile, the juvenile court declined the guardian ad litem’s request to suspend mother’s visits after the incident and ordered that the children have “video visits until they get back into therapy.” The caseworker testified that the Department did not offer any video visits because she started supervising in-person visits shortly after the court’s order. As a result, mother missed, at most, one week of family time, and we therefore discern no reversible error. ¶ 16 Third, mother asserts that the Department failed to make reasonable efforts because it never expanded or liberalized her family time, even though the juvenile court gave it discretion to do so. But section 19-3-208(2)(b) only requires that the Department provide family time services “as determined necessary and appropriate by individual case plans.” Stated another way, to satisfy the reasonable efforts requirement, the Department must 
8 provide family time as ordered by the court, which, except as described above, mother does not challenge. The record therefore shows that the Department satisfied its burden under section 19-3-208, and we are not convinced that it had any duty to exercise its discretion to expand or liberalize family time, especially while there were concerns with mother’s behavior during family time. ¶ 17 Next, we turn to mother’s assertion that the Department failed to provide her with adequate transportation services. Specifically, she contends that the record shows that the caseworker gave her only two rides and did not know how many rides the life skills worker had provided. But, as noted above, the record shows that mother also received rides from the family time supervisor and that the Department provided her with bus passes and other resources for rides throughout the case. Thus, because the record supports the juvenile court’s finding that the Department provided adequate transportation services as required by section 19-3-208(2)(d)(I) and mother has not directed us to anything in the record showing that she missed a visit or a treatment appointment due to the Department’s failure to provide adequate transportation services, we reject her assertion. 
9 ¶ 18 Finally, we disagree with mother’s assertion that the Department did not provide her with housing resources. Here, mother notes that she “lacked safe and appropriate housing for her family” because her home “did not have functioning kitchen appliances or even a locking front door.” But the record shows that the Department bought mother a microwave and arranged for someone to install a new door. Mother also asserts that “the caseworker testified . . . that she was not aware of where [mother] lived and had not even asked [her] about her housing situation.” But the context of this testimony was that, about three weeks before the termination hearing, the caseworker learned that mother was getting evicted and therefore the caseworker could not confirm whether mother had housing at the time of the hearing. ¶ 19 In sum, we conclude that the record supports the juvenile court’s findings that the Department provided the necessary resources for mother to comply with her treatment plan but she did not use those resources to become a fit parent. See A.V., ¶ 12; J.C.R., 259 P.3d at 1285. We therefore decline to disturb the court’s judgment. 
10 III. Less Drastic Alternatives ¶ 20 Mother next contends that the juvenile court failed to properly consider less drastic alternatives, such as an allocation of parental responsibilities (APR).
1 We disagree. ¶ 21 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. People in Interest of M.M., 726 P.2d 1108, 1122-23 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child’s physical, mental, and emotional conditions and needs. § 19-3-604(3); People in Interest of Z.P., 167 P.3d 211, 214 (Colo. App. 2007). Long-term placement may not be a viable alternative to termination if the child needs a stable, permanent home that can be assured only by adoption. Z.P., 167 P.3d at 214. ¶ 22 For a less drastic alternative to be viable, it must do more than “adequate[ly]” meet a child’s needs; rather, it must be the “best” 1 Mother presents this argument in the reasonable efforts section of her brief. As our supreme court has previously concluded, a challenge to “the Department’s search for placement options” should be construed as a challenge to less drastic alternatives, not reasonable efforts. People in Interest of B.H., 2021 CO 39, ¶¶ 78-79. 
11 option for the child. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child’s best interests, it must reject the less drastic alternative and order termination. Id. at ¶ 32. And under those circumstances, we must affirm the court’s decision if its findings are supported by the record. People in Interest of B.H., 2021 CO 39, ¶ 80. ¶ 23 In this case, the juvenile court found that there was no less drastic alternative to termination, noting that the Department had investigated “other family members,” but there were not “any other family members . . . willing to do [an] APR except for [the] maternal grandmother, who is not [an] appropriate” placement option. The court noted that the children had been in their paternal aunt’s care for “a good chunk of time” and they were “thriving in her care.” ¶ 24 The juvenile court further found that, even if an APR was an available option, it would not be in the children’s best interests. Specifically, the court noted that, because these children had been in multiple placements (even before the case began), they “needed to know that they [were not] moving again for the sake of their mental and emotional well-being.” Therefore, the court concluded that 
12 termination, not an APR, was in the children’s best interests, so that the children “know that they are in a permanent home.” ¶ 25 Mother first contends that the juvenile court erred because the Department failed to conduct a diligent search for relatives. But, for the purpose of less drastic alternatives, the Department is not required to independently identify and evaluate possible placement options. Z.P., 167 P.3d at215. Instead, the Department is only required to evaluate a reasonable number of persons the parent identifies as placement options. People in Interest of D.B-J., 89 P.3d 530, 532 (Colo. App. 2004). Mother did not identify any placement options, either in the juvenile court or on appeal, that the Department failed to investigate and evaluate. We therefore discern no error. ¶ 26 Mother next asserts that the Department “never fully explored the possibility of an APR” to the paternal aunt because the caseworker only provided the paternal aunt “with a form document listing the available permanency options and asked [the paternal aunt] to let her know which option she chose.” Nevertheless, it is undisputed that the paternal aunt did not want an APR and preferred to adopt the children. See S.N-V., 300 P.3d at 920 (noting 
13 that a court may consider whether a placement option prefers adoption rather than an APR in its decision to reject less drastic alternatives); see also People in Interest of P.D., 41 Colo. App. 109, 113, 580 P.2d 836, 838 (1978) (noting that a court cannot award an APR to an unwilling person who is not the child’s parent). Because mother has not directed us to any authority requiring the Department to do more than ask the placement option about her preference for an adoption or APR, we reject her argument. ¶ 27 Finally, mother contends that the Department should have “reevaluate[d] placement” with the maternal grandmother. The caseworker testified that the Department eliminated the maternal grandmother as a placement option because she did not have the ability to meet the children’s needs, allowed mother to have unauthorized contact with the children, and had reportedly emotionally and physically abused the children. See People in Interest of T.E.M., 124 P.3d 905, 910 (Colo. App. 2005) (placement with a relative is not a less drastic alternative if the placement option cannot appropriately care for the child). Based on statements made by the county attorney at a hearing in September 2023, mother suggests that the Department failed to reevaluate the 
14 maternal grandmother after the juvenile court ordered it to do so in March 2023. But the caseworker testified at the termination hearing that she reassessed the maternal grandmother for placement and continued to have the same concerns. ¶ 28 At any rate, even assuming that the maternal grandmother was an appropriate placement option, we discern no error. As noted, the juvenile court found that an APR was not in the children’s best interests because they needed permanency that could not be achieved through an APR. See Z.P., 167 P.3d at 214. In other words, the court determined, with record support, that an APR, regardless of the placement option, was not a less drastic alternative to termination. IV. Disposition ¶ 29 The judgment is affirmed. JUDGE DUNN and JUDGE MOULTRIE concur.