24CA0130 Peo in Interest of MWC 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0130 El Paso County District Court No. 22JV30080 Honorable Robin Chittum, Judge The People of the State of Colorado, Appellee, In the Interest of M.W.C., a Child, and Concerning C.C., Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE JOHNSON Navarro and Hawthorne*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 Kenneth R. Hodges, County Attorney, Amy C. Fitch, Assistant County Attorney, Colorado Springs, Colorado, for Appellee Josi McCauley, Guardian Ad Litem Patrick R. Henson, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
1 ¶ 1 In this dependency and neglect proceeding, C.C. (mother) appeals the judgment terminating her parent-child legal relationship with M.W.C. (the child). We affirm. I. Background ¶ 2 In April 2022, the El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect concerning the then-three-year-old child. The Department alleged concerns about physical and verbal abuse. The Department also alleged that the child’s welfare was at risk due to mother’s ongoing mental health and substance use issues. And the Department alleged that mother was unable to adequately supervise the child or control the child’s aggressive behaviors. ¶ 3 The juvenile court initially granted temporary legal custody of the child to his great-grandparents under the Department’s supervision. About four months later, the Department became concerned about the safety of the great-grandparents’ home and placed the child in foster care for a brief time. The court then granted legal custody of the child to his maternal grandmother 
2 under the Department’s supervision, which is where the child was placed for the remainder of the case. ¶ 4 Mother agreed to a deferred adjudication, and the juvenile court adopted a treatment plan for her. The Department later moved to revoke the deferred adjudication and terminate mother’s parental rights. ¶ 5 The juvenile court set a revocation hearing, but the Department requested that the hearing be continued and combined with the termination hearing. Mother did not object. When the parties appeared for the continued hearing, the Department requested another continuance based on unresolved Indian Child Welfare Act inquiries. Again, mother did not object, and the court reset the hearing. ¶ 6 On the morning of the combined hearing, mother did not appear, and her counsel requested a continuance. Both the Department and the guardian ad litem (GAL) objected. The juvenile court denied the request. ¶ 7 After hearing evidence, the juvenile court found that mother had failed to reasonably comply with her treatment plan, which was 
3 a condition of the deferred adjudication, and entered an order adjudicating the child dependent and neglected. The court also found that the statutory termination requirements had been met and that there were no less drastic alternatives to termination. The court granted the Department’s motion for termination and issued a written order. II. Less Drastic Alternatives ¶ 8 Mother contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. Specifically, she argues that the court failed to give preference to placement with kin, that the caseworker failed to follow administrative regulations to conduct a family search every six months, and that the Department failed to investigate the child’s paternal relatives as potential placement options who might have been willing to accept an allocation of parental responsibilities (APR). We discern no error. A. Standard of Review and Applicable Law ¶ 9 A juvenile court may terminate parental rights if it finds by clear and convincing evidence that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an 
4 appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024. Consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 40. ¶ 10 In considering less drastic alternatives, the juvenile court must primarily consider the child’s physical, mental, and emotional conditions and needs. People in Interest of Z.M., 2020 COA 3M, ¶ 29. The court may also consider other factors, including whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent’s fitness to care for the child. People in Interest of A.R., 2012 COA 195M, ¶ 38. And the court may consider whether the placement favors adoption over an APR. Z.M., ¶ 31. ¶ 11 To aid the court in determining whether there is a viable less drastic alternative to termination, the department must evaluate a reasonable number of persons the parent identifies as placement options. People in Interest of D.B-J., 89 P.3d 530, 532 (Colo. App. 
5 2004). But the department is not obligated to “independently identify and evaluate other possible placement alternatives.” People in Interest of Z.P., 167 P.3d 211, 215 (Colo. App. 2007). ¶ 12 For a less drastic alternative to be viable, it must do more than “adequate[ly]” meet a child’s needs; rather, the less drastic alternative must be the “best” option for the child. A.M., ¶ 27. Long-term or permanent placement with a family member, short of terminating the parent’s parental rights, may not be in the child’s best interests if it does not provide the permanence assured by adoption or otherwise meet a child’s needs. A.R., ¶ 41. ¶ 13 If the juvenile court considers a less drastic alternative but finds instead that termination is in the child’s best interests, it must reject the less drastic alternative and order termination. A.M., ¶ 32. In those circumstances, we are bound to affirm the court’s decision unless its findings are unsupported by the record. People in Interest of B.H., 2021 CO 39, ¶ 80. B. Analysis 1. Preference to Kin ¶ 14 We are not persuaded by mother’s argument that the juvenile court failed to give preference to the child’s “relative or kin” when 
6 placing the child as required by section 19-3-403(3.6)(a)(V), C.R.S. 2024. The child was initially placed with his great-grandparents. Then, after a brief time in foster care, the child was placed with his maternal grandmother. Mother does not explain how placement with the child’s great-grandparents and then with maternal grandmother did not give relative or kin preference when placing the child. See § 19-1-103(91), C.R.S. 2024 (defining “kin” to include a “relative of the child”). 2. Compliance with Regulations for Search of Relatives ¶ 15 Mother contends that the Department erred because it did not conduct a family search every six months and thus the Department failed to identify additional relatives for possible placement. We reject both arguments. ¶ 16 Under a regulation issued by the state department of human services, a caseworker must conduct a family search and engagement every six months throughout the entirety of the case. See Dep’t of Hum. Servs. Reg. 7.304.52(C), 12 Code Colo. Regs. 2509-4. It is true that the caseworker admitted that she had not personally conducted a new family search and engagement even 
7 though she had been assigned to the case for longer than six months and was aware of the regulation. ¶ 17 But under that regulation, a search for an additional relative or kin placement may be discontinued when (1) a placement is stable with a relative or kin a minimum of six months; (2) the relative or kin has committed to the legal permanence of the child; and (3) there is agreement among the parties that the relative or kin is the appropriate permanent option, the court finds it an appropriate permanency option, and it is in the best interests of the child that the family search be discontinued. See id. at Reg. 7.304.52(C)(1)–(3). As mentioned before, the child lived continuously with maternal grandmother, except for a few months early on in the case when he was placed with maternal great-
grandparents and then briefly in foster care. Significantly, maternal grandmother was pursuing permanency. ¶ 18 Although mother initially objected to the child being placed with maternal grandmother, she did not identify any other possible placement except for her mother and great-grandparents. There is no affidavit in the record completed by mother identifying other 
8 potential family placement options before the termination hearing, and the caseworker testified that mother had “never presented any other alternative placement options to [her].” The child did not have a pre-existing relationship with relatives on the paternal side. And maternal grandmother supported a relationship between the child and mother so long as mother could be safe and appropriate with the child. ¶ 19 Thus, under this record, even if the regulation’s requirements were not fully satisfied (i.e., agreement with mother and a judicial finding that the search may be discontinued), we discern no basis for reversal, as any error was harmless. Specifically, mother did not identify any other relative that the Department’s search should have discovered as a possible placement. And given maternal grandmother’s commitment to permanency, we see no basis for concluding that the Department’s continued search efforts would have yielded a different result. See C.R.C.P. 61 (“The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.”). 
9 ¶ 20 Here, the caseworker testified that before she was assigned to the case, the previous caseworker would have conducted a family search to look for a new placement for the child. It was the caseworker’s understanding that the previous caseworker reached out to the child’s paternal relatives as part of that process. The caseworker also testified that she had tried, but was unable, to find contact information for the paternal relatives. Additionally, the Department investigated maternal great-grandfather as a potential placement option but had safety concerns about his home. And the Department investigated maternal grandmother as a placement option before placing the child with her. The caseworker testified that she was unaware of any other kin-like options for placement. ¶ 21 While a Department must evaluate a reasonable number of persons identified by the parents as possible placement alternatives, it has no obligation to independently identify and evaluate other possible placement alternatives. Z.P., 167 P.3d at 215. ¶ 22 Therefore, we disagree with the assertion that the Department failed to adequately investigate other relatives, especially 
10 considering that mother did not bring any to the Department’s attention in a timely manner. See D.B-J., 89 P.3d at 532 (rejecting a less drastic alternative argument based on relatives who were first mentioned during the termination hearing). ¶ 23 And even assuming, as mother asserts, that one of the child’s paternal relatives would have been deemed appropriate and willing to accept an APR, we discern no error because the juvenile court found that moving the child to another home “in order to get an APR” would not be in his best interests. The court also found that the child needed the level of permanency that termination and adoption would provide based on his history of trauma, behavioral issues, and high emotional needs. And the court found that the benefits of adoption outweighed the loss of the child’s relationship with mother because, at least in part, family time with mother was inconsistent and “emotional” for the child. In other words, the court determined that an APR, regardless of the placement option, was not a viable less drastic alternative to termination. ¶ 24 The record supports these findings. The caseworker opined that at the time of the termination hearing, it would have been 
11 harmful to remove the child from maternal grandmother’s care and place him with “potential strangers.” The caseworker also testified that the child had emotional and behavioral issues including throwing things, biting people, hitting people, and frequently trying to escape into unsafe places. The caseworker opined that termination and adoption were in the child’s best interests because he had “high emotional behavioral needs” and deserved “stable consistency” and permanency. ¶ 25 Maternal grandmother testified that mother missed about 47 of 105 family-time sessions. Grandmother stated that the child would sometimes hit and kick her before family time, telling her that she could not make him go. Grandmother also testified that the child was sometimes “stressed and agitated” or “pretty anxious” after family time with mother. And grandmother confirmed that she preferred adoption over an APR because she believed adoption would give the child the closure he needed. ¶ 26 Accordingly, because the record supports the juvenile court’s finding that termination, not an APR, was in the child’s best interests, we discern no error. See B.H., ¶ 80. 
12 III. Motion for Continuance ¶ 27 Next, mother contends that the juvenile court abused its discretion by denying her motion to continue the termination hearing. We disagree. A. Standard of Review and Applicable Law ¶ 28 Whether to grant or deny a motion for a continuance is within the sound discretion of the juvenile court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. People in Interest of T.E.M., 124 P.3d 905, 908 (Colo. App. 2005). A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable or when it misapplies or misconstrues the law. People in Interest of E.B., 2022 CO 55, ¶ 14. ¶ 29 In ruling on a motion for a continuance, the juvenile court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child’s need for permanency. People in Interest of T.M.S., 2019 COA 136, ¶ 44. When, as here, a child is under six years old when the petition in dependency and neglect is filed, the expedited permanency planning (EPP) provisions apply, and the juvenile court cannot delay or continue the termination hearing absent good 
13 cause and a finding that the delay would serve the child’s best interests. §§ 19-3-104, 19-1-123, C.R.S. 2024. B. Analysis ¶ 30 On the morning of the termination hearing, mother did not appear in court. Mother’s counsel stated that mother wanted to testify and requested a continuance. But mother had not informed her counsel of any reason for her nonappearance. Regardless, counsel asserted that it was “a problem” that the juvenile court granted continuances for the Department when it had “issues on [its] end” but likely would not do the same for mother. Counsel argued that because the child was in a stable home with maternal grandmother, a continuance was not “going to be detrimental to any party.” Both the Department and the GAL objected, arguing, in sum, that a continuance would not be in the child’s best interests, particularly because the case had already been open for seventeen months and the child needed permanency. ¶ 31 After considering the arguments, the juvenile court denied mother’s motion for continuance. The court noted that although mother had notice of the hearing, she had not provided any reason 
14 for her nonappearance. The court found that a continuance would not be in the child’s best interests because the EPP provisions applied and the hearing had already been continued before. Essentially, the court considered the reason for mother’s motion and weighed it against the need for resolving the case and the child’s best interests. ¶ 32 Although mother asserts that the juvenile court abused its discretion by granting the Department’s motions for continuances while subsequently denying hers, we reject that assertion because mother did not object to the Department’s motions. And while mother’s counsel argued on the day of the hearing that a continuance would not be detrimental to any party, counsel did not assert that a continuance would be in the child’s best interests. Mother also does not explain on appeal how a continuance would have served the child’s best interests. See T.M.S., ¶¶ 47, 49 (affirming the denial of a motion to continue when the parent “provided no basis to find that a delay would serve the child’s best interests”). And although mother asserts that the denial violated her due process right to be heard, she does not challenge the 
15 juvenile court’s determination that the termination criteria were met or explain how her testimony would have changed that determination. See E.B., ¶¶ 20-22 (affirming the denial of a motion to continue because the parent failed to explain how their presence would have changed the court’s ultimate determination that the termination criteria had been met). ¶ 33 Because the juvenile court’s ruling reflects that it properly balanced the reasons proffered for the continuance, the need to promptly resolve the proceeding, and the child’s best interests, we perceive no abuse of discretion in the court’s denying the motion. See T.E.M., 124 P.3d at 909 (affirming the denial of a continuance when the parent did not provide any reason for failing to appear and, considering the EPP provisions, a continuance was not in the children’s best interests). IV. Conclusion ¶ 34 The judgment is affirmed. JUDGE NAVARRO and JUDGE HAWTHORNE concur.