The PEOPLE of the State of Colorado,
Petitioner–Appellee,

In the Interest of Z.P., J.P., I.P., and
E.P., Children, and Concerning
D.P., Respondent–Appellant.

No. 06CA2478.

Colorado Court of Appeals,
Div. I.

July 26, 2007.

§ 24–51–1105, C.R.S.2006.

Bruce T. Barker, County Attorney, Thomas J. Joaquin, Assistant County Attorney, Greeley, Colorado, for Petitioner–Appellee.

Deborah L. Getz, Severance, Colorado, for Respondent–Appellant.

JUDGMENT AFFIRMED

Opinion by Judge MÁRQUEZ.

D.P. (father) appeals from a judgment terminating the parent-child legal relationship between him and his children, Z.P., J.P., I.P. and E.P. We affirm.

The Weld County Department of Social Services (department) became involved with the family after the sudden, unexplained death of one of the children. Through an investigation, the department discovered that it had received several prior referrals concerning the family; that another child had died under similar circumstances; that the family home was uninhabitable; and that the parents had a history of substance abuse, domestic violence, and criminal activity.

Shortly after the petition in dependency and neglect was filed, father admitted that the children's environment was injurious to their well-being, the children were adjudicated dependent and neglected, and a treatment plan was approved to address the family's problems. Thereafter, father, who was periodically incarcerated, intermittently complied with the treatment plan and maintained sporadic contact with his caseworker and counsel.

Because of his lack of progress, a motion to terminate parental rights was filed. Following a hearing on the motion, during which father proceeded pro se, the trial court found that the criteria for termination had been established by clear and convincing evidence and terminated his parental rights.

I.

Father contends that he did not receive effective assistance of counsel because court-appointed counsel was allowed to withdraw twice during the proceeding, leaving him without counsel at the termination hearing and various other stages of the proceeding. He argues that, in light of the interests at stake in a dependency and neglect proceeding, court-appointed counsel should not be allowed to withdraw because of a parent's lack of cooperation in preparing the case.

Although father frames the contention as an ineffective assistance of counsel claim, he has not set forth any facts indicating that counsel's performance here was deficient or prejudicial. Therefore, we address the contention as a right to counsel claim. We conclude that father's right to counsel was not violated.

■ An indigent parent has a statutory right to court-appointed counsel in a dependency and neglect proceeding. Sections 19–1–105(2), 19–3–202(1), 19–3–602(2), C.R.S. 2006. To determine whether a parent has a due process right to counsel at the termination stage of the proceeding, a trial court must consider

whether "the parent's interest is an extremely important one"; whether "the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures"; and whether "the complexity of the proceeding and the incapacity of the uncounselled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high."

*C.S. v. People in Interest of I.S.*, 83 P.3d 627, 636 (Colo.2004)(quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31, 101 S.Ct. 2153, 2161–62, 68 L.Ed.2d 640 (1981)).

■ To invoke the right to counsel, a parent must request, in a timely manner, that an attorney be appointed. *People in Interest of T.D.*, 140 P.3d 205, 218 (Colo.App. 2006). Failure to make a timely request constitutes a waiver of the right to counsel. *People in Interest of L.A.C.*, 97 P.3d 363, 367 (Colo.App.2004); *see People in Interest of V.W.*, 958 P.2d 1132, 1134 (Colo.App.1998).

■ The record here reveals that father was advised of his right to court-appointed counsel early in the proceeding and that, upon his request, counsel was appointed to represent him. Almost one year later, counsel filed a motion to withdraw because of father's failure to cooperate in the preparation of his defense. As required by C.R.C.P. 121 § 1–1(2)(b), counsel notified father of his right to object to withdrawal. Father did not object, and the motion to withdraw was granted.

Three months later, father filed a request for appointed counsel, which was granted by the trial court. Again, father failed to cooperate with counsel, and, five months later, counsel moved to withdraw in accordance with C.R.C.P. 121 § 1–1(2)(b). Father did not object, and the trial court granted the motion to withdraw the same day the motion to terminate was filed.

The next day, father was advised in writing of his right to counsel at the termination hearing in accordance with § 19–3–602(2). Although he arranged to be present at the termination hearing, he did not ask that counsel be appointed to represent him. Under these circumstances, we conclude that father waived his right to counsel. *See People in Interest of T.D., supra*, 140 P.3d at 218; *People in Interest of L.A.C., supra*, 97 P.3d at 367; *People in Interest of V.W., supra*, 958 P.2d at 1134.

Further, we decline father's request to impose stricter standards for withdrawal of counsel in dependency and neglect proceedings than those imposed in other civil proceedings.

Unlike other states, Colorado has not adopted a statute or a rule setting forth specific standards for withdrawal of counsel in dependency and neglect proceedings. *See, e.g.*, Cal. Welf. & Inst.Code § 317(d) (West 2007)(providing that appointed counsel "shall continue to represent the parent ... unless relieved by the court upon the substitution of other counsel or for cause"); Mo. Sup.Ct. Rule 116.02(c) (providing that counsel may withdraw in a juvenile proceeding "only with leave of court and in a manner consistent with Rule 4 [Mo. R. Prof. Conduct 4 concerning the client-lawyer relationship and addressing grounds for and ethical considerations regarding withdrawal of counsel] and any applicable local court rules"); Ohio Juv. R. 4(F) (providing that "[a]n attorney ... may withdraw only with the consent of the court upon good cause shown"). States that have not adopted a specific statute or rule have looked either to criminal cases or to the general civil rules for guidance in determin-

ing what standards to apply. *See, e.g., In re Robert S.,* 357 Ill.App.3d 214, 217–18, 293 Ill.Dec. 589, 828 N.E.2d 899, 901–02 (2005) (applying the general civil rule for withdrawal of appointed counsel in a termination proceeding); *In re Winifred,* 65 Mass.App.Ct. 1119, 842 N.E.2d 994 (2006) (unpublished opinion) (referring to criminal cases for guidance in determining whether to allow withdrawal of counsel in a dependency proceeding).

Dependency and neglect proceedings are civil in nature, and the Colorado courts have long held that the Colorado Rules of Civil Procedure apply in such proceedings when a particular procedure is not addressed in the Colorado Children's Code (Code) or the Colorado Rules of Juvenile Procedure (Juvenile Rules). C.R.J.P. 1; *People in Interest of A.E.,* 914 P.2d 534, 537 (Colo.App.1996); *People in Interest of S.B.,* 742 P.2d 935, 938 (Colo.App.1987).

The Code requires that a parent be advised of the statutory right to appointed counsel at his or her first appearance and again after the motion to terminate is filed if the parent is not represented. Sections 19–3–202(1), 19–3–602(2). Neither the Code nor the Juvenile Rules address the standards for withdrawal of appointed counsel.

Under C.R.C.P. 121 § 1–1(2)(b), an attorney may withdraw from a case only upon approval of the court. Such approval lies within the discretion of the trial court, but cannot be granted until a motion to withdraw, which advises the client of his or her right to object and other obligations, has been filed and served on the client.

Thus, we conclude that the discretionary standard for withdrawal of counsel set forth in C.R.C.P. 121 § 1–1(2)(b), together with the advisements required by that rule and the Code, provide sufficient safeguards to protect a parent's interests in a dependency and neglect proceeding.

## II.

Father contends that the rehabilitative efforts made by the department were not reasonable because his second caseworker failed to comply with state regulations requiring periodic contact with him.

A parent's failure to bring perceived deficiencies in the department's rehabilitative efforts to the trial court's attention prior to the termination hearing constitutes a waiver of the right to raise the issue on appeal. *People in Interest of D.P.,* 160 P.3d 351 (Colo.App.2007).

Nothing in the record here indicates that father complained about the lack of personal contact with the caseworker at any time prior to the termination hearing. Instead, it was father's failure to apprise the caseworker of his whereabouts as required by the treatment plan that precluded periodic contact. *People in Interest of A.H., supra,* 736 P.2d at 427–28 (determining that the failure of the treatment plan was due to the parent's lack of compliance, and not to an inherent weakness in the plan). Under these circumstances, father cannot now contend that the department's efforts were unreasonable. *See People in Interest of D.P., supra.*

## III.

Finally, father contends that the trial court erred in failing to consider placement of the children with their paternal grandmother or their paternal grandfather and his wife as less drastic alternatives to termination. We find no error.

Implicit in the statutory scheme for termination set forth in § 19–3–604(1)(c), C.R.S.2006, is a requirement that the trial court consider and eliminate less drastic alternatives before entering an order of termination. *C.S. v. People in Interest of I.S., supra,* 83 P.3d at 640; *People in Interest of M.M.,* 726 P.2d 1108, 1122 (Colo.1986). In so doing, the trial court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. *People in Interest of D.B–J.,* 89 P.3d 530, 531 (Colo.App.2004).

Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption. *People in Interest of T.E.M.,* 124 P.3d 905, 911 (Colo.App.2005);

*People in Interest of J.M.B.*, 60 P.3d 790, 793 (Colo.App.2002); *People in Interest of E.I.C.*, 958 P.2d 511, 515 (Colo.App.1998). Although the department must evaluate a reasonable number of persons identified by the parents as possible placement alternatives, it has no obligation to independently identify and evaluate other possible placement alternatives. *People in Interest of D.B–J., supra,* 89 P.3d at 532.

 The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo.1982).

Here, the trial court found that no alternative short of termination would provide the permanency and flexibility needed in making appropriate permanent placements for the children. This finding is supported by evidence that the children had severe emotional and behavioral problems, as well as developmental delays, which precluded a sibling group placement and required that they have the permanency of adoptive homes.

The only relatives presented as a placement alternative for the children during the termination hearing were the maternal grandparents. Throughout the proceeding, father had opposed placement with them. Furthermore, the caseworker testified that their home study was conditionally approved, but that the grandparents did not resolve the concerns addressed in the home study and lacked the skills necessary to provide adequate parental care for the children. Based on this testimony, the trial court rejected placement with them as a less drastic alternative to termination.

Although other relatives were not presented as a placement option during the termination hearing, the record shows that early in the proceeding the department contacted the paternal grandfather and his wife, who lived in California, and they supported foster care placement of the children while father addressed his substance abuse problem. Although they indicated that they would consider taking the children as a last resort, there is nothing in the record showing that they inquired into the children's well-being or father's progress, or expressed any further interest in providing permanent care for the children. Similarly, the record does not show that the paternal grandmother, with whom the department had contact early in the proceeding, expressed an interest in providing permanent care for the children.

Thus, we perceive no abuse of discretion in the trial court's finding that there were no less drastic alternatives to termination. *See People in Interest of C.A.K., supra; People in Interest of D.B–J., supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge J. JONES concur.