24CA0412 Peo in Interest of MMV 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0412
Mesa County District Court No. 22JV71
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.M.V., a Child,

and Concerning M.F.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE YUN
Harris and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Todd Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1 In this dependency and neglect proceeding, M.F. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with M.M.V. (the child). Mother's sole contention on appeal is that the court erred by finding that no less drastic alternatives to termination existed. We disagree and therefore affirm the judgment.

## I. Background

¶ 2 In May 2023, the Mesa County Department of Human Services (Department) received reports about mother's substance abuse, mental health, and incarceration, as well as concerns of neglect. Based on these reports, the Department initiated a dependency and neglect proceeding.

¶ 3 Mother admitted the allegations in the petition and the child was adjudicated dependent and neglected. The court then adopted a treatment plan for mother.

¶ 4 Later, the Department moved to terminate mother's parental rights. The court granted the motion after holding a three-day hearing. As relevant here, the court found that there were no less drastic alternatives to termination that would be in the best interest

of the child because the child needed the stability and consistency that only termination would provide.

## II. Termination Criteria and Standard of Review

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6    Implicit in the statutory scheme for termination is a requirement that the juvenile court consider and eliminate less drastic alternatives before entering an order of termination. *People in Interest of B.H.*, 2021 CO 39, ¶ 51; *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19. In considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35. The court may also consider other factors, including whether the alternative placement option favors adoption rather than an allocation of parental

responsibilities (APR), *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31, and whether the child needs a stable, permanent home that can be assured only by adoption. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007).

¶ 7 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs. *A.M.*, ¶ 27. Rather, the proposed alternative must be the "best" option for the child. *Id.* Therefore, if the court considers a less drastic alternative but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination. *Id.* at ¶ 32. The less drastic alternative of long-term or permanent placement with a relative or kinship provider may not be appropriate when it does not provide adequate permanence or otherwise meet the child's needs. *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 8 We must accept the juvenile court's determination that no less drastic alternative to termination was available unless the finding was so clearly erroneous as to find no support in the record. *People in Interest of C.Z.*, 2015 COA 87, ¶ 64. Therefore, when the juvenile court considers a less drastic alternative and still determines that the termination of parental rights is in the child's best interests, we

are bound to affirm that decision if the court's findings are supported by the record. *B.H.*, ¶ 80.

## III.   Analysis

¶ 9      Mother argues that the child's best interests would be better served by an alternative placement with one of several proposed kinship providers.  She also argues that the Department did not adequately explore these placement options, including with the father, the child's maternal grandparents, the child's maternal uncle, and two family friends.  We are not persuaded.

¶ 10      Although the juvenile court did not make specific findings regarding each placement option, it found that there were no less drastic alternatives to termination that would be in the child's best interests.  The court "considered the possibility of an allocation of parental rights," but concluded "that the benefits of termination outweigh the detriment" because of the child's need for stability and consistency.  It noted that the child, who was three years old when the dependency and neglect proceeding was initiated, was "in a permanent home with people that would like to adopt her and raise her, and give her a safe and secure upbringing."

¶ 11 The record supports the court's findings. The caseworker testified that she believed termination was in the child's best interests, as the child needed stability, consistency, and certainty about her future. Although the child had bonded with mother and their supervised visits went well, mother had not completed "[t]he real hard work of getting a job, getting a place, proving [her] sobriety." She also testified that she still had safety concerns. The caseworker did not believe additional time to comply with the treatment plan was appropriate, considering that the case had already been open for nearly a year and a half with little progress. *See People In Interest of S.Z.S.*, 2022 COA 133, ¶ 25 (when the child is under six years old, the expedited permanency planning provisions "require that the child be placed in a permanent home as expeditiously as possible"). And the child's foster parent testified that she would prefer to adopt the child rather than have an APR, as she believed that it was difficult for the child to "continue to be in limbo" and that an APR would be too hard on the child.

¶ 12 Furthermore, the caseworker testified that the Department considered less drastic alternatives and investigated the various placement options, including those offered by mother. However, all

those placement options were ruled out because of safety concerns, their request to be withdrawn from consideration, or the Department's inability to investigate due to a lack of available information. For example:

- The father was not considered for placement because he repeatedly indicated he was not the child's biological parent and he did not want to retain his parental rights to the child.

- The child's maternal grandmother was excluded due to safety concerns related to her criminal history and allegations of ongoing drug activity and unsafe living conditions.

- The maternal step-grandfather was excluded because mother had previously told the caseworker that he had sexually abused her.

- While the maternal uncle filed several documents requesting placement of the child, he was denied placement because of his failure to respond to the Department and safety concerns given that he lived with the maternal grandmother.

- J.B., a family friend, was excluded due to safety concerns because she refused to cooperate and complete the fingerprint and urinalysis testing necessary for the placement and substance use investigation.

- S.P., another family friend, did not request placement of the child until less than a week before the termination hearing. The caseworker testified that she had safety concerns about placing the child with S.P. because none of the necessary investigations — such as background checks, fingerprinting, and a home study — had been completed.

¶ 13 Given this record, we conclude the juvenile court did not err by finding that there were no less drastic alternatives to termination and that termination was in the child's best interests.

## IV. Disposition

¶ 14 The judgment is affirmed.

JUDGE HARRIS and JUDGE KUHN concur.