24CA1833 Peo in Interest of JA 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1833
Mesa County District Court No. 23JV82
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.A., a Child,

and Concerning M.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Todd Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    In this dependency and neglect action, M.A. (mother) appeals the judgment terminating her parent-child legal relationship with J.A. (the child).  We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (the Department) filed a petition in dependency or neglect alleging that the child was substance exposed at birth.  The juvenile court granted temporary custody of the child to the Department for placement with the maternal great-aunt.  The Department later transferred temporary custody of the child to the maternal great-aunt.

¶ 3    The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents.  Mother's treatment plan required her to address her substance dependence and participate in family time with the child.  The Department later moved to terminate both parents' parental rights.  Thirteen months after the petition was filed, the juvenile court terminated both parents' parental rights following a contested hearing.  Father is not a party to this appeal.

## II.     Less Drastic Alternative

¶ 4     Mother contends that the juvenile court erred by finding there was no less drastic alternative to termination.  In particular, mother contends that (1) the maternal great-aunt was not fully informed about the possibility of an allocation of parental responsibilities (APR) with mother and (2) there was no evidence that an APR would be contentious.

### A.     Standard of Review and Applicable Law

¶ 5     We review a juvenile court's findings regarding less drastic alternatives for clear error.  *See People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 15, 44.

¶ 6     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan was not successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.  Implicit in these criteria is the requirement that the juvenile court consider and eliminate less drastic alternatives.  *A.M.*, ¶ 19.  In considering less drastic alternatives, a

court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 7 A juvenile court may consider and weigh various factors in determining the availability of a less drastic alternative, including whether the child's placement option favors adoption rather than an APR, *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31, and whether an ongoing relationship with the parent would be beneficial or detrimental to the child, *People in Interest of B.H.*, 2021 CO 39, ¶ 81. Long-term placement may not be a viable alternative to termination if the child needs a stable, permanent home that can be assured only by adoption. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007).

### B. Analysis

¶ 8 The juvenile court considered, and rejected, three possible less drastic alternatives to termination: giving mother more time to work on her treatment plan, exploring an APR, and guardianship. In doing so, the juvenile court found that less drastic alternatives were not in the best interest of the child. The court considered the child's young age and noted that she had been in out-of-home placement since birth. The court also found that, in the three

3

months between when the Department moved for termination and the hearing, mother did not change her behavior or begin to comply with the terms of the treatment plan.

¶ 9      The record supports these findings.  The caseworker testified that mother completed a ninety-day inpatient program for substance treatment, but she did not follow through with the recommendations after discharge.  Mother also did not participate in any substance abuse testing during the pendency of the case.  And mother attended family time inconsistently and would tell the caseworker and the maternal great-aunt that she forgot or was too busy to participate.  The caseworker testified that these behaviors "are generally concerns that substance use is occurring."

¶ 10     We acknowledge that the maternal great-aunt did not appear to understand what an APR would entail before advising the court of her preference for adoption.  But a placement provider's preference is only one factor the juvenile court must weigh.  The court's oral remarks support that it did not base its decision solely on the maternal great-aunt's stated preference, but instead considered the child's young age, need for permanency, lack of relationship with mother, and best interests.

¶ 11     Specifically, on cross-examination, the maternal great-aunt said she was not in favor of an APR because she did not "want to confuse the baby [as] to why [mother] stopped coming around" and she wanted the baby to think the maternal great-aunt had become her mother. When asked again why adoption was in the best interest of the child, the maternal great-aunt testified that, if the mother "really wanted the baby[,] . . . she would've completed the classes since she's gotten out of the recovery center."

¶ 12     The maternal great-aunt also testified that mother only saw the child "once in a blue moon" and that, about a month or two before the termination hearing, mother called the maternal great-aunt, crying, because her boyfriend had beaten her. The maternal great-aunt worried about the child being around mother's friends and boyfriend given the boyfriend's abusive behavior. Finally, maternal great-aunt testified that her husband acts like a grandfather or father to the child, playing with the child on the floor, watching cartoons with her, taking her outside, and being supportive. In all, this testimony supports the district court's best interests of the child finding because the maternal great-aunt had thought about the child's needs and home environment.

¶ 13     Given this record, the juvenile court could have rejected an APR as a less drastic alternative even if it had found that there was a cooperative relationship between mother and the maternal great-aunt or that the maternal great-aunt was willing to accept an APR. *See Z.M.*, ¶ 30 ("Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption."); *People in Interest of A.R.*, 2012 COA 195M, ¶ 41 ("[L]ong-term or permanent placement with a family member . . . , short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs.")

¶ 14     We therefore discern no error in the juvenile court's findings that it considered and rejected less drastic alternatives before ordering the termination of mother's parental rights.

### III.    Conclusion

¶ 15     The judgment is affirmed.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.