25CA1234 Peo in Interest of AKF 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1234
City and County of Denver Juvenile Court No. 23JV30948
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.K.F., a Child,

and Concerning T.R.F.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, T.R.F. (mother) appeals the judgment terminating her parent-child legal relationship with A.K.F. (the child).  We affirm.

## I.    Background

¶ 2    In November 2023, the Denver County Department of Human Services filed a petition in dependency or neglect concerning the then-six-month-old child.  Before the filing, mother was found unresponsive in her car, while the child was laying upside down and unrestrained in front of her.  The Department alleged concerns about mother's substance use and involvement with the criminal justice system.

¶ 3    The juvenile court granted the Department temporary legal custody of the child, and he was placed in foster care.  Thereafter, mother admitted to the allegations in the petition, and the court adjudicated the child dependent or neglected.  The court adopted a treatment plan that required mother to maintain contact with the caseworker; develop and demonstrate parental protective capacity; address domestic violence concerns; and address substance use issues.

¶ 4     The Department later moved to terminate mother's parental rights. Mother did not appear at the two-day termination hearing. At the hearing, the caseworker testified that mother had not complied with any part of her treatment plan. After considering the evidence, the juvenile court granted the Department's termination motion.

## II.     Less Drastic Alternatives

¶ 5     Mother contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. Specifically, she argues that the child's maternal grandmother was willing and able to accept an allocation of parental responsibilities (APR) for the child, and thus, there was a viable less drastic alternative to termination. We discern no error.

### A.     Applicable Law and Standard of Review

¶ 6     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.

§ 19-3-604(1)(c), C.R.S. 2025. Consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 40.

¶ 7     In analyzing less drastic alternatives, the juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. Long-term or permanent placement with a family member, short of termination, may not be in a child's best interests if it does not provide the permanence assured by adoption or otherwise meet that child's needs. *People in Interest of A.R.*, 2012 COA 195M, ¶ 41.

¶ 8     "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Accordingly, when a juvenile court considers a less drastic alternative but instead finds that termination is in a child's best interests, we are bound to affirm the court's decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 9    The juvenile court considered whether an APR to grandmother was a viable less drastic alternative to termination but ultimately concluded that it was not.  Specifically, the court found that while it had "no doubt" that grandmother loved the child, the child "needed permanence now," and grandmother could not provide that because she was not available for placement or an APR at the time of the hearing.

¶ 10    More specifically, the juvenile court found that in order to place the child with grandmother, an Interstate Compact on the Placement of Children (ICPC) home study was required because grandmother lived in Texas.  However, the court found that an "ICPC [home study] cannot be started without a physical address" and that the Department did not have an address to put on the forms because grandmother was living with her oldest daughter who was unwilling to be a part of the ICPC process.  Moreover, the court noted that it had been fifteen months since grandmother became aware of this case but that she was still living "in the same place . . . with the same people, who do not want to be involved in this case."  Thus, although the court expressed some hesitation

4

about "possibly severing generational ties" to the child's family, it found that it would not be in the child's best interests to "wait . . . an additional unknown time period [to] figure out possible placement." Based on those findings, the court determined that there were no viable less drastic alternatives to termination and that termination was in the child's best interests.

¶ 11 The record supports the juvenile court's findings. The caseworker, who testified as an expert in social casework with an emphasis in child protection, opined that the child needed permanency "sooner rather than later" because he was very young and at a developmental stage in which he was forming important attachments. The caseworker also testified that the child's age was a "very large factor" in her belief that termination was in the child's best interests because he had spent the majority of his life in foster care and needed a sense of security.

¶ 12 Moreover, the caseworker testified that the Department "heavily considered" grandmother as a placement option. However, when the caseworker spoke to grandmother in March 2024, grandmother stated that she was unable to be a placement option. Nonetheless, about three months later, grandmother told the

caseworker that she wanted to be considered as a placement option but that she would need to move first because she was living with her oldest daughter who did not want to be involved in the case. Although the caseworker told grandmother that she did not need to move for the Department to start an ICPC home study, grandmother told the caseworker that "her current housing situation wasn't a situation that she wanted to bring [the child] into." Thus, the caseworker testified that grandmother wanted to be considered as a placement option only "once she got new housing."

¶ 13    Nonetheless, the caseworker testified that all the ICPC paperwork was completed, and the Department was just waiting on grandmother to move and provide her new address. For the next eleven months, the caseworker regularly contacted grandmother to check on the status of the move, and grandmother continually told the caseworker that she would be moving in "six to eight weeks" or by the end of the month. At one point, grandmother even told the caseworker that she was going to move to Colorado, and the caseworker gathered all the necessary information to expedite the required fingerprinting and background check upon grandmother's

arrival.  However, by the time of the termination hearing, grandmother had not moved or notified the caseworker that she was available for placement of the child with her.  In fact, at the hearing, grandmother testified that her living situation was the same as it was when she first found out about the case in March 2024 and that she did not "have a place for [the child] to go."  Thus, we discern no clear error in the court's finding that there were no viable less drastic alternatives to termination.

¶ 14    We reject mother's argument that the juvenile court failed to comply with sections 19-3-403(3.6)(a)(V) and 19-3-508(5)(b)(II), C.R.S. 2025, which require the court to give preference to placement with kin or a child's sibling.  To an extent, this argument conflates statutory placement preference requirements with less drastic alternatives.  *See A.R.*, ¶ 44 (while statutory placement preferences are relevant when determining which among a choice of placements is in the child's best interest, a less drastic alternative analysis considers whether any placement, short of termination, would be in the child's best interest).  Even so, the record does not indicate that the juvenile court failed to comply with the statutory placement preference requirements.

¶ 15    Rather, section 19-3-403(3.6)(a)(V) requires the juvenile court to give preference to placement with kin "who is capable, willing, and *available* for care." (Emphasis added.) And section 19-3-508(5)(b)(II) requires the court to presume that placement with a child's sibling is in the child's best interests only "[i]f the county department locates a capable, willing, and *available* joint placement" for siblings. (Emphasis added.) Here, although grandmother had custody of the child's sibling and stated that she wanted to be considered as a placement option, grandmother specifically testified that she was not available for placement of the child because of her living situation. Thus, we disagree with mother's assertion that the court violated statutory placement preference requirements by determining that an APR to grandmother was not a viable less drastic alternative to termination.

¶ 16    We also reject mother's argument that the juvenile court's less drastic alternatives determination was erroneous because the Department failed to "identify relatives and kin and to engage the relatives and kin in providing support for the child," as required under section 19-3-702(5)(e), C.R.S. 2025. To start, section 19-3-

702(5)(e) deals with a department's duty to, at each permanency planning hearing, "provide the court with a written or verbal report" specifying what efforts have been made to identify a permanent home for a child. *Id.* True, as part of that duty, a department must include its ongoing efforts to identify and engage kin. *Id.* And a department must "explain why any identified relatives or kin have been ruled out for placement." *Id.* But mother does not point us to any deficiencies in the Department's reporting of its ongoing efforts to identify kin or its explanations of why any kin had been ruled out as placement. Rather, mother seems to argue that the Department failed to sufficiently identify and investigate relatives or kin as placement options for the child. And, if that is what mother argues, then we disagree.

¶ 17   Specifically, "[a]lthough the department must evaluate a reasonable number of persons identified by the parents as possible placement alternatives, it has no obligation to independently identify and evaluate other possible placement alternatives." *People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007). Here, as noted by the juvenile court, despite its order for mother to fill out and provide a family resource affidavit, she never did. Moreover,

the caseworker testified that the only relative mother ever mentioned as a possible placement option was grandmother. Still, according to the caseworker, the Department ran a search that "pulls information about both parents' family" to try to identify possible placement options. However, the search only revealed grandmother as a possible placement option. And, as noted, the caseworker consistently contacted grandmother throughout the case and "heavily considered" her as a placement option. Accordingly, we disagree with mother's assertion that the Department failed to adequately investigate family members and kin for placement, especially considering that no evidence suggests that mother provided any specific information about any relatives except for grandmother.

¶ 18   Last, we reject mother's argument that the Department "never made reasonable efforts to explore family/kinship placement options or assist . . . grandmother in obtaining a larger home to help her become a placement for [the child]." The Department and guardian ad litem argue that we should decline to address this argument because it is undeveloped. Indeed, in mother's opening brief, the entirety of this argument is one sentence. *See People in*

*Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or specific supporting authorities). However, even if we address it, the argument fails.

¶ 19 First, the record shows that the Department made efforts to identify relative or kin placements for the child, but it was only able to identify grandmother, and grandmother was not available. Second, we are unaware of any legal authority requiring a department to provide housing or income assistance to extended family as part of its obligation to make reasonable efforts. And mother points us to none.

¶ 20 In sum, we conclude that the juvenile court properly considered and rejected an APR to grandmother based on the child's immediate need for permanency and grandmother's ongoing lack of availability as an immediate permanent placement option. Because the record supports the juvenile court's finding that termination was in the child's best interests, reversal is not warranted. *See B.H.,* ¶ 80.

### III. Disposition

¶ 21 The judgment is affirmed.

JUDGE FOX and JUDGE BROWN concur.