25CA1235 Peo in Interest of BR 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1235
Montrose County District Court No. 23JV30037
Honorable D. Cory Jackson, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of B.R., R.R., P.T., and M.T., Children,

and Concerning E.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Julie R. Andress, County Attorney, Ryan J. Dunn, Assistant County Attorney, Montrose, Colorado, for Appellee

Jenna L. Mazzucca, Counsel for Youth, Salida, Colorado, for B.R. and R.R.

Jenna L. Mazzucca, Guardian Ad Litem, for P.T. and M.T.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, E.B. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationships with B.R., R.R., P.T., and M.T. (the children). Mother's sole contention on appeal is that the court erred by finding that no less drastic alternatives to termination existed. We disagree and therefore affirm the judgment.

## I.     Background

¶ 2     In December 2023, the Montrose County Department of Human Services (Department) filed a petition in dependency and neglect alleging concerns about mother's substance use and mental health, as well as reports of domestic violence in the family home. The petition further alleged that mother was arrested for possession of controlled substances, driving under the influence, and child abuse for using illicit substances while two of the children were in the vehicle with her.

¶ 3     The Department was granted custody of the children and placed all four in a kinship placement with their maternal uncle and aunt. B.R. and R.R. remained in the kinship placement for the entirety of the proceedings. P.T. and M.T. were later reunified with

their father, Mi.T., where they remained for the remainder of the proceedings.

¶ 4    The juvenile court adjudicated the children dependent and neglected by default and adopted a treatment plan for mother. Later, the Department moved to terminate mother's parental rights. After a hearing, which mother did not attend, the juvenile court terminated mother's parent-child legal relationships with the children.

## II.    Termination Criteria and Standard of Review

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6    Implicit in the statutory scheme for termination is a requirement that the juvenile court consider and eliminate less drastic alternatives before entering an order of termination. *People in Interest of B.H.*, 2021 CO 39, ¶ 51; *People in Interest of A.M. v.*

2

*T.M.*, 2021 CO 14, ¶ 19. In considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35. The court may also consider other factors, including whether the alternative placement options favors adoption rather than an allocation of parental responsibilities (APR), *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31, and whether the child needs a stable, permanent home that can be assured only by adoption. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007).

¶ 7 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs. *A.M.*, ¶ 27. Rather, the proposed alternative must be the "best" option for the child. *Id.* Therefore, if the court considers a less drastic alternative but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination. *Id.* at ¶ 32. The less drastic alternative of long-term or permanent placement with a relative or kinship provider may not be appropriate when it does not provide permanence or otherwise meet the child's needs. *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 8    We must accept the juvenile court's determination that no less

drastic alternative to termination was available unless the finding

was so clearly erroneous as to find no support in the record. *People*

*in Interest of C.Z.*, 2015 COA 87, ¶ 64. Therefore, when the juvenile

court considers a less drastic alternative and still determines that

the termination of parental rights is in the child's best interests, we

are bound to affirm that decision if the court's findings are

supported by the record. *B.H.*, ¶ 80.

¶ 9    The credibility of witnesses, the sufficiency, probative effect

and weight of the evidence, and the inferences and conclusions to

be drawn therefrom are all within the province of the juvenile court.

*People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

### III.    Analysis

¶ 10   Mother argues that the children's best interests would be

better served through an APR order because an APR "would have

provided permanency and stability while preserving their

relationship with mother."

¶ 11   The juvenile court found that there were no less drastic

alternatives "that are either viable or in the children's best interest."

The court noted mother's historical tendency to "com[e] in and out

of the children's lives," and believed "[t]hat behavior is likely to continue if this case closes with an allocation of parental responsibility," which was detrimental to the children. Ultimately, the court concluded that termination was in the children's best interests. *See B.H.*, ¶ 80.

¶ 12    The record supports the court's findings. The caseworker testified that she believed termination was in the children's best interest and was "the only option to ensure the children have a stable future." She reported that mother had a history of asking the kinship placement to take care of the children, only returning "randomly, months later" to accuse kinship placement of kidnapping the children and demanding their return. The caseworker noted this would disrupt the children's enrollment in school. She did not think mother had "enough mental health stability and sobriety to be cognizant enough to know how that impacts the kids." The caseworker also testified that she still had safety concerns. The caseworker did not believe additional time to comply with the treatment plan was appropriate, considering this was an expedited permanency planning (EPP) case that had already been open eighteen months and mother had made no meaningful

progress on any component of her treatment plan. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25 (when a child is under six years old, the EPP provisions "require that the child be placed in a permanent home as expeditiously as possible"). Notably, the caseworker reported that mother had only one in-person family time visit with the children and "maybe" two virtual visits, despite the availability of virtual and in-person visits throughout the case.

¶ 13    Furthermore, the caseworker testified that B.R. and R.R. reported they wanted to be adopted by kinship placement. Kinship placement also reported that he wanted to adopt B.R. and R.R. *See Z.M.*, ¶ 31. While Mi.T. did not testify, the caseworker testified that she believed that an APR between Mi.T. and mother "would subject [M.T. and P.T.] to ongoing conflict," and mother may "even kidnap" the children. The court found the caseworker's testimony credible. *See A.J.L.*, 243 P.3d at 249-50.

¶ 14    Given this record, we conclude the juvenile court did not err by finding that there were no less drastic alternatives to termination and that termination was in the child's best interests.

IV.    Disposition

¶ 15    The judgment is affirmed.

6

JUDGE FREYRE and JUDGE YUN concur.