24CA0522 Peo in Interest of JR 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0522
Arapahoe County District Court No. 21JV467
Honorable Victoria Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.R., a Child,

And Concerning A.R. and K.P.,

Appellants.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE BERNARD*
Román, C.J., and Graham*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

Ronald Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant A.R.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant K.P.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024

¶ 1      A mother, K.P., and a father, A.R., appeal the juvenile court's judgment terminating their parent-child legal relationship with their child, J.R. We affirm.

## I.      Background

¶ 2      In July 2021, the Arapahoe County Department of Human Services became concerned about the child's welfare because of mother's substance abuse and because of father's incarceration. Based on these concerns, the department filed a petition in dependency and neglect.

¶ 3      The parents admitted the petition's allegations. The court adjudicated the child to be dependent and neglected, and it adopted a treatment plan for the parents. The department subsequently asked the court to terminate mother and father's parental rights.

¶ 4      Father remained incarcerated until a few months before the termination hearing. After three continuances over a six-month period, the court held a two-day evidentiary hearing, and it then terminated the parent's parental rights to the child.

## II.    Discussion

¶ 5    Mother and father both contend the juvenile court erred when it found their conduct or condition was unlikely to improve within a reasonable time.  We discern no error.

### A.    Legal Framework and Standard of Review

¶ 6    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent did not comply with, or was not successfully rehabilitated by, an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 7    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law

that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 8 We will not disturb the court's factual findings if they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. The credibility of the witnesses, as well as the sufficiency, probative value, and weight of the evidence, including the inferences and conclusions to be drawn from it, are within the court's discretion. *A.M.*, ¶ 15.

## B. Applicable Law

¶ 9 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of S.K.*, 2019 COA 36, ¶ 74. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting that is sufficient to meet the child's physical, emotional, and mental needs. *Id.*

¶ 10 In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 75. If a parent has made

little to no progress on a treatment plan, the court does not have to give the parent additional time to comply. *See People in Interest of A.N-B.*, 2019 COA 46, ¶ 34; *see also People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998)(noting that even "increased compliance" over the course of a case may not justify additional time).

¶ 11    A "reasonable time" is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *A.N-B.,* ¶ 29. What constitutes a reasonable time is fact-specific, and it varies from case to case. *Id.* at ¶ 40. But, as in this case, when the child is under the age of six years old, the court must also consider the expedited permanency planning provisions, which require the court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

### C.    Analysis

#### 1.    Father

¶ 12    Father asserts that the juvenile court committed reversible error when it decided his conduct was unlikely to change within a reasonable time. He submits that the evidence shows

4

"overwhelming" proof of his substantial compliance with all requirements of his treatment plan. Because father takes issue with each requirement, we address all of them.

¶ 13 The court found that father was unfit and that his condition was unlikely to change within a reasonable amount of time given the continuing concerns about his ability to be a protective parent, his capacity to provide for the child's needs, his ongoing cases, and his potential to abuse controlled substances. The record supports the court's findings.

¶ 14 Father's treatment plan required him to do six things: (1) maintain caseworker contact and sign necessary releases of information; (2) demonstrate legal income; (3) demonstrate a legal lifestyle; (4) demonstrate stability; (5) engage in mental health treatment; and (6) demonstrate protective parenting.

### a. Caseworker Contact

¶ 15 Father contends that he substantially complied with this requirement because he stayed in contact with the department throughout the case. The caseworker agreed.

¶ 16 But the caseworker testified that she had trouble getting the required releases of information from father so that she could

5

monitor his compliance with the treatment plan. He counters that the department did not receive his releases of information because it had not mailed the releases to him, along with pre-stamped envelopes, as was required by his treatment plan.

¶ 17 While it is true that the caseworker did not mail the releases of information to father, he does not acknowledge that he had received the releases multiple times in person, via email, and through his legal counsel. And it is uncontested that father never provided releases of information to his parole officer or to the caseworker.

### b. Legal Income

¶ 18 Father contends that the court inappropriately "shifted the burden of proof" on this issue because the court did not "cite any evidence supporting a finding that [f]ather's income was insufficient to support his son's needs." Father adds that he and mother provided "undisputed testimony" that confirmed they were able to meet the child's needs.

¶ 19 The record shows father provided a paystub to the department to confirm his employment. But the caseworker testified that she had only received one paystub and that it was not enough for her to

assess father's regular finances to determine whether it was enough to provide for his needs and for the child's needs.

¶ 20    The court ultimately found the caseworker credible, and, as we noted above, credibility determinations are within the court's discretion.  *A.M.*, ¶ 15.  It is up to the court, as the trier of fact, to weigh the evidence, including any conflicting evidence.  *See People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  In a case, such as this one, in which the court's factual findings are supported by competent evidence in the record, we will not disturb them.  *Id.* at 256 (a reviewing court cannot substitute its opinion for the juvenile court's when conflicting evidence exists).

### c.    Maintaining a Legal Lifestyle

¶ 21    Father submits that he was compliant with this requirement because the new criminal charges the caseworker mentioned were later dismissed.  But the criminal charges were not dismissed until well after the termination hearing.  Consequently, this was not information available to the court at the time of the termination hearing.

¶ 22    Plus, because father never provided a release of information for his parole officer, the caseworker was never able to confirm whether he was following the terms of his parole.

### d.    Stability

¶ 23    Father contends that he complied with the stability requirement because he had housing and because nothing in his treatment plan required him to "either own or rent his own home." It is uncontested that, at the time of the termination hearing, father was living with mother in a rented room in his employer's home.

¶ 24    True, the treatment plan did not require him to own or rent his own home. But it required him to have a *safe* and *stable* environment for the child.

¶ 25    The caseworker testified that she had concerns about the stability of the father's living arrangements because he never provided the department with a lease and because the caseworker was unsure whether the parents had any legal right to remain in the rented room. Additionally, father never provided information that would have enabled the department to do a background check on the other adults residing in the building to ensure the child's safety.

### e.  Mental Health Treatment

¶ 26  Father asserts that he completed a mental health evaluation while incarcerated, which recommended no further treatment. But his treatment plan specifically required him to comply with a mental health assessment "[u]pon discharge from the Department of Corrections." He did not do this. The caseworker testified that she believed another assessment of father was necessary because there was a big difference in life and in potential stressors between living in custody and living in the community that could affect his mental health.

### f.  Protective Parent

¶ 27  Finally, father asserts that the evidence showed he was a protective parent. In contrast, the caseworker had concerns about his protective capacity given that the parents intended to remain together and that mother continued to struggle with substance abuse. The caseworker did not think that father had demonstrated any understanding of mother's substance abuse and how it could affect the child, or how he would keep the child safe from it. *See People in Interest of C.T.S.*, 140 P.3d 332, 334 (Colo. App. 2006)(a parent who chooses to remain in a relationship with someone who

poses a threat to the child's welfare may be deemed unfit if such conduct prevents the parent from providing adequate protection).

¶ 28     Father said that, since he had been released from custody, he had never seen mother under the influence of controlled substances and that he had no concerns about her drug usage. But mother testified that she had used controlled substances as recently as two weeks before the first termination hearing while she was living with father; he did not know she had relapsed.

¶ 29     Finally, father appears to contend that the court's findings are erroneous because it relied on the caseworker's testimony. But the court found the caseworker's testimony credible, which was well within its province. *See A.M.*, ¶ 15.

¶ 30     Even though father partially complied with his treatment plan, such partial compliance was not enough to render him fit. *See People in Interest of D.L.C.*, 70 P.3d 584 (Colo. App. 2003)(partial compliance, or even substantial compliance, may not be sufficient to improve the parent's conduct or condition). Because the record supports the court's findings, we conclude that the court did not err.

## 2. Mother

¶ 31  Mother asserts that the court erred when it concluded that she could not become fit within a reasonable time because, she submits, she had demonstrated she was able to remain sober. Had the case remained open, she continues, she could have established extended sobriety.

¶ 32  The court decided that mother was unfit because of her lifestyle and because of her use of controlled substances, neither of which had improved even with the treatment plan. The court also found that her conduct was unlikely to change within a reasonable time.

¶ 33  The record supports these findings. For example, throughout the life of this case, mother engaged in substance abuse treatment with at least seven different providers and, while at times she did well, she had several relapses and there were significant gaps in her treatment. Mother ultimately never provided the department with proof that she had consistently maintained her sobriety. She admitted that she had relapsed with multiple controlled substances as recently as two weeks before the first termination hearing, and,

11

at the height of her addiction, she had been using up to one hundred fentanyl pills a day.

¶ 34    Additionally, at the time of the termination hearing, mother had an outstanding warrant for her arrest in a criminal case that had been open for nearly two years.

¶ 35    The caseworker testified that she did not believe it was in the child's best interest for the case to remain open, given how long it had already been open and the child's need for permanency.

¶ 36    Mother also asserts that the court erred when it decided that she was unable to meet the child's needs.  But she neither develops this assertion in her brief, nor points to parts of the record supporting it.  We therefore will not address it.  *See In re Parental Responsibilities Concerning S.Z.S.*, 22 COA 105, ¶ 29.

¶ 37    We note that mother also contends that the court should not have terminated her parental rights because the child had bonded with her.  But she neither develops this assertion in her brief, nor points to parts of the record supporting it.  We therefore will not address it.  *See S.Z.S.*, ¶ 29.

¶ 38    Against this background, we conclude that the court did not err.

### III. Less Drastic Alternatives

¶ 39    Mother also asserts that the court erred when it found there was no less drastic alternative to termination because, she adds, the foster parents never said that they were unwilling to accept an allocation of parental responsibilities. We disagree.

### A. Applicable Law and Standard of Review

¶ 40    Implicit in the statutory scheme for terminating parental rights is a requirement that the court consider and eliminate less drastic alternatives before entering an order of termination. *People in Interest of B.H.*, 2021 CO 39, ¶ 51; *A.M.*, ¶ 19. In considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35. The court may also consider other factors, including whether the alternative placement option favors adoption rather than an allocation of parental responsibilities, *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31, and whether the child needs a stable, permanent home that can be assured only by adoption. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007).

13

¶ 41    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs.  *A.M.*, ¶ 27.  Rather, the proposed alternative must be the "best" option for the child.  *Id.*  As a result, if the court considers a less drastic alternative, but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination.  *Id.* at ¶ 32.

¶ 42    We must accept the court's determination that no less drastic alternative to termination was available unless the finding was so clearly erroneous as to find no support in the record.  *People in Interest of C.Z.*, 2015 COA 87, ¶ 64.  In other words, when the court considers a less drastic alternative and still decides that the termination of parental rights is in the child's best interests, we are bound to affirm that decision if the court's findings are supported by the record.  *B.H.*, ¶ 80.

## B.    Analysis

¶ 43    The court found that less drastic alternatives had been considered and ruled out, that an allocation of parental rights to the child's foster family was "not an option," and that the child needed the stability and permanency that termination would provide.

¶ 44　The record supports the court's findings. Although members of the foster family did not testify, the caseworker testified that they were unwilling to consider an allocation of parental rights after their relationship with the parents had broken down.

¶ 45　Mother cites no law, and we are not aware of any, that requires the foster parents themselves to testify about their unwillingness to support an allocation of parental rights. The caseworker also testified that, even if the foster parents were open to one, the caseworker would not have recommended it. As we have previously noted, the court found the caseworker's testimony to be credible. *See A.M.*, ¶ 15.

¶ 46　The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.