25CA0860 Peo In Interest of EA 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0860
Boulder County District Court No. 23JV30182
Honorable Dea M.  Lindsey, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.A., a Child,

and Concerning R.O. and G.S.A.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Ben Pearlman, County Attorney, Cheryl Koh-Sicotte, Assistant County
Attorney, Boulder, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Elizabeth A. McClintock, Office of Respondent Parents' Counsel, Colorado
Springs, Colorado, for Appellant R.O.

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant G.S.A.

¶ 1     In this dependency or neglect action, R.O. (mother) and G.S.A. (father) appeal the judgment terminating their parent-child legal relationships with E.A. (the child).  We affirm.

## I.     Background

¶ 2     The Boulder County Department of Housing and Human Services (the Department) filed a petition in dependency and neglect, alleging that the child tested positive for illegal substances at birth and was experiencing withdrawals.  The juvenile court granted temporary custody to the Department, and the child was placed with paternal cousins.  The court adjudicated the child dependent or neglected and adopted treatment plans for both parents.  One year later, the Department moved to terminate both parents' parental rights.  The juvenile court granted the motion following a contested hearing.

## II.     Reasonable Efforts

¶ 3     Both parents contend that the Department failed to provide reasonable efforts.  We are not persuaded.

### A.     Applicable Law and Standard of Review

¶ 4     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025, a department must make

1

reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. Reasonable efforts means the "exercise of diligence and care" for a child who is in out-of-home placement, and the reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208. § 19-1-103(114).

¶ 5 To evaluate whether a department made reasonable efforts, the court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). A department has discretion to prioritize certain services to address a family's most pressing needs; therefore, whether a department made reasonable efforts should be "measured holistically." *People in Interest of E.D.*, 2025 COA 11, ¶ 11. A parent is ultimately responsible for using the services offered by a department, and the juvenile court "may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts." *Id.* at ¶ 12.

¶ 6 The juvenile court, as the trier of fact, determines the sufficiency, probative effect, and weight of the evidence and

assesses witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation. *E.D.*, ¶ 13.

### B. Mother's Reasonable Efforts Contention

¶ 7    Mother contends that the juvenile court erred by finding the Department made reasonable efforts because the Department failed to amend her treatment plan to "address the cycle of domestic violence between mother and father." Mother asserts that this is a reasonable efforts issue — and not a claim that the court erred by finding that the treatment plan was appropriate — because issues of domestic violence "would have to be addressed before the child could be safe with either of the parents."

¶ 8    We are not persuaded. The caseworker's unchallenged testimony was that the Department offered mother services and support after she reported a domestic violence incident between herself and father, even though the treatment plan did not require mother to address domestic violence.

¶ 9    Importantly, the court disagreed with mother's contention that domestic violence was a child protection concern. Instead, the court found that substance dependance was the primary barrier to mother's ability to meet the child's emotional, physical, and mental health needs. The record supports this finding. The caseworker testified that domestic violence was not a safety concern for the Department because mother gave conflicting reports about what happened with father, never reported the incident to law enforcement, and separated from father soon after. Furthermore, the caseworker testified that the treatment plan was "primarily focused on mother's ongoing substance use," which was the safety concern requiring the Department and the court's intervention. The court found that despite the structure and support of the dependency or neglect case, mother failed to engage in treatment in a sustained and meaningful way.

¶ 10   Moreover, the court found, with record support, that the Department provided reasonable efforts to mother by offering assessments, individual and group mental health and substance abuse treatment, withdrawal management, in-patient treatment, supervised family time, substance use monitoring, assistance with

housing, financial supports, early intervention evaluations, transportation assistance, kinship care, family engagement meetings, domestic violence support, and ongoing caseworker support. Mother does not challenge these parts of the court's reasonable efforts findings.

¶ 11 We discern no error in the court's finding that the Department provided reasonable efforts to mother.

### C. Father's Reasonable Efforts Contentions

¶ 12 Father contends that the juvenile court erred by finding that the Department provided reasonable efforts because the Department allegedly failed to contact certain relatives and provide them with information as required by section 19-3-403(3.6)(a)(IV)(A)-(D), C.R.S. 2025. Under this provision, within thirty days of the removal of a child, the Department must send family members a particular notice informing them about placement possibilities, including financial assistance. § 19-3-403(3.6)(a)(IV). The statute also provides that the notice shall be developed by the state department of human services, the office of the child's representative, the office of respondent parents' counsel, and "other interested stakeholders."

5

§ 19-3-403(3.6)(a)(IV)(C). These provisions took effect in August 2023. Ch. 367, sec. 4, § 19-3-403, 2023 Colo. Sess. Laws 367.

¶ 13 There is no indication in the record to suggest that the notice mandated by the statute had been developed or was available at the time the Department's diligent search team sent out notices to the child's family. And father does not explain, and we cannot discern, why the juvenile court should have considered the notices required by section 19-3-403(3.6)(a)(IV) as part of its evaluation of the Department's provision of reasonable efforts. Instead, the court relied on section 19-3-103(114), which directs the court to consider the provision of services listed in section 19-3-208 and does not address placement of the child. Thus, we discern no error.

¶ 14 In any event, any alleged error is harmless. Father's concern is that the child's paternal uncle never received the notice and therefore was not aware of possible benefits of becoming a placement provider. But the paternal uncle testified that he received a notice in connection with the dependency or neglect case for the child's older sibling and was in contact with the Department at the beginning of this case. The paternal uncle appeared at court hearings and told the Department that he was willing to be a

placement provider, even without being informed about possible economic support.

¶ 15 Father also contends that the juvenile court erred by finding that the Department provided reasonable efforts because the child's placement provider expressed a preference for adoption without fully understanding how an allocation of parental responsibilities (APR) might work. Father asserts that the Department "failed to explain to the placement provider what an APR was or how it functioned." But we are not aware of, and father does not provide, any legal authority supporting his claim that the Department was required to provide this information as part of its reasonable efforts obligation. Consequently, we conclude that the court did not err in its reasonable efforts finding.

### III. Less Drastic Alternative to Termination

¶ 16 Mother and father contend that the juvenile court erred by finding that there was no less drastic alternative to termination because the court could have ordered an APR to the child's placement provider or the child's paternal uncle. We disagree.

A. Relevant Law and Standard of Review

¶ 17    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must also consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). The determination of a less drastic alternative is not a separate criterion and is instead "implicit in, and thus intertwined with, the statutory criteria for termination." *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 18    A juvenile court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether the alternative placement option favors adoption rather than an APR, *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31, and whether an ongoing relationship with the parent would be beneficial or detrimental to the child, *People in Interest of B.H.*, 2021 CO 39, ¶ 81. Long-term placement may not be a viable alternative to termination if the child needs a stable, permanent home that can be

8

assured only by adoption. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007).

¶ 19　Ultimately, for a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *B.H.*, ¶ 80.

## B.　Analysis

¶ 20　The juvenile court found there was no less drastic alternative that would serve the best interests of the child. The court made extensive findings including the following:

- the child had been placed with family members since his birth, nineteen months before the termination hearing;

- mother and father had a difficult relationship "marred with substance use," which created a "potential pitfall in considering an APR that include[d] both parents";

- mother and father's "lack of engagement and communication raises further doubts about the viability of an APR arrangement with either parent";

- an APR arrangement could result in "additional conflict with [the child] caught in the middle";

- there was a high likelihood of a future dependency or neglect case if mother and father remained legally involved with the child;

- an APR — regardless of the child's placement provider — was not in the child's best interests; and

- termination of parental rights was necessary to ensure that the child achieved the legal permanency and stability that only adoption could provide.

¶ 21    The record supports these findings.  The dependency or neglect action opened when the child was a newborn.  The caseworker testified that neither parent complied with any portion of their treatment plans, which required that parents improve their relationship with the child and address substance dependance and mental health.  Despite liberal access to family time, the family time facilitator testified that mother and father attended only seventy

percent of family time offered for most of the case and reduced their engagement even further in the last six months.

¶ 22     The caseworker, an expert in child protection casework, opined that that termination and adoption was in the child's best interests given his age and needs, the capacity of the parents, and the demonstrated inability of the parents to provide the child with consistent care.  The caseworker opined that an ongoing relationship with either mother or father would be harmful because there was a high risk of ongoing exposure to continued substance use and the parents were unlikely to make the changes the child needed within a reasonable time.

¶ 23     True, the paternal uncle testified that he was open to becoming the child's placement provider as part of an APR agreement with mother and father.  But as the juvenile court noted, an APR "is not an appropriate, less drastic alternative merely because it exists as a potential option."  *See A.M.*, ¶ 27.

¶ 24     The child's paternal cousin had been the child's placement provider since his release from the hospital.  The paternal cousin testified that she did not want to participate in an APR with mother or father.  Mother contends that the paternal cousin did not

11

understand what limitations could be ordered and that an APR "cannot be considered or eliminated as an option if the parties governed by [an APR] order do not understand it." Mother contends that "accurately proving the current kin placement with all the necessary information . . . is required for a placement to make an informed decision about an APR."

¶ 25 We are not persuaded because it is the juvenile court, not the placement provider, that is required to consider and eliminate a less drastic alternative. And while a court *may* consider a placement provider's stated preferences, there is no indication that the placement provider's preference was a factor in the court's decision here. *See S.N-V.*, 300 P.3d at 920 (noting that a court may consider whether a placement option prefers adoption rather than an APR in its decision to reject less drastic alternatives); *see also People in Interest of A.R.*, 2012 COA 195M, ¶ 38 (noting that the court *may* consider "various factors").

¶ 26 Mother and father conflate the juvenile court's obligation to consider a less drastic alternative before granting termination with the court's obligation to make placement determinations in the child's best interests. *Compare* § 19-3-604 (listing criteria for

12

termination) and *L.M.*, ¶ 24 (less drastic alternative is implicit in the statutory criteria) *with* § 19-3-702(6) (listing considerations for changing a child's placement provider) and *A.R.*, ¶ 44 (distinguishing the less drastic alternative analysis from statutory placement preferences).[1]

IV.   Disposition

¶ 27   The judgment is affirmed.

JUDGE FOX and JUDGE MEIRINK concur.

---

[1] Although the court found that neither parent formally requested a change to the child's placement, it nevertheless found — with record support — that moving the child would be traumatic, unnecessary, and not in the child's best interests. The caseworker testified that the Department assessed a change in placement but that, "right now[,] we don't have an identified benefit to" moving the child. Therefore, to the extent that mother and father contend that the juvenile court erred by declining to order a change in the child's placement, we discern no error.